**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. 25-376-2 |
| DONALD GRIFFIN | |

**Pappert, J.**                                                      **February 20, 2026**

**MEMORANDUM**

Donald Griffin was charged by a grand jury with possession of fentanyl with intent to distribute.  Griffin stipulated to his detention at his initial appearance before Magistrate Judge Hey.  He now moves to revoke his detention order.  The Court held a hearing on February 20, 2026, and for the reasons that follow denies his Motion.

I

In Spring of 2025, a confidential informant told the Philadelphia Police Department Intensive Drug Investigation Squad that a large drug trafficking organization was distributing fentanyl from Philadelphia to other areas, including Pittsburgh.  An approximately six-week investigation followed, during which officers identified and surveilled multiple individuals, addresses and vehicles they suspected were involved in the organization.

On May 12, 2025, Griffin was driving a Ford Explorer rented from Pittsburgh International Airport.  He was pulled over travelling westbound from Philadelphia on the Schuylkill Expressway.  Earlier that day in Philadelphia, officers watched him meet another suspect driving a Dodge Caravan.  Officers believed the Caravan was used by the organization to transport narcotics.  The suspect drove the Caravan from a

1

suspected drug stash house, rendezvoused with Griffin in his rented Ford Explorer, and moved a box into it.  When officers searched the Explorer, they found approximately 222,000 packets of fentanyl.  Laboratory tests confirmed the fentanyl was mixed with xylazine and medetomidine and weighed more than three kilograms.  The narcotics were packaged and organized "Pittsburgh style," the manner commonly used in western Pennsylvania.  *See* (Gov't's Resp. in Opp'n at 3–5, Dkt. No. 136.)

In August of 2025, Griffin was indicted by the grand jury and charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count One) and possession with intent to distribute 400 grams or more of a mixture containing fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count Three).  (Indictment, Dkt. No. 1.)  The Government moved for and Griffin stipulated to his detention.  (Bail Status Order, Dkt. No. 92.)

## II

The Bail Reform Act governs pretrial detention.  A rebuttable presumption in favor of pretrial detention arises in certain circumstances:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed [] an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

18 U.S.C. § 3142(e)(3).  Griffin faces a mandatory minimum of ten years' and a maximum of life imprisonment.  21 U.S.C. § 841(b)(1)(A).  There is probable cause to believe Griffin violated 21 U.S.C. §§ 846 and 841(a)(1) because of the grand jury's indictment and the facts proffered by the government.  *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (holding that an indictment is sufficient to support a

finding of probable cause triggering the rebuttable presumption).  The Court must presume "that no condition or combination of conditions will reasonably assure [Griffin's] appearance as required and the safety of the community" if he were released. 18 U.S.C. § 3142(e).

Once this presumption arises, the burden shifts to Griffin to "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam).  Section 3142(g) of the Bail Reform Act provides factors the Court must review to determine if Griffin has satisfied that burden:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person in the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forth with credible evidence conflicting the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007); *see*

*also Carbone*, 793 F.2d at 560.  Even if a defendant rebuts the presumption of dangerousness or flight, however, the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the Court.  *See, e.g., Carbone*, 793 F.2d at 560–61.  To order pretrial detention once the presumption has been rebutted, the Court must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance at trial or by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community.  *United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  The Court reviews the factors and makes this determination *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).

III

The first § 3142(g) factor, the nature and circumstances of the offense, weigh in favor of Griffin's detention.  Congress considers drug crimes with a maximum penalty of more than ten years' imprisonment so serious that it has imposed an evidentiary burden on persons seeking pretrial release.  *See United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985).  If Griffin is convicted of trafficking fentanyl, he faces a maximum sentence of life imprisonment.

The weight of the evidence, the second factor, also favors Griffin's continued detention.  After weeks of surveillance and investigation, officers watched him engage in what they believed was a narcotics transaction.  After pulling him over and searching his car, they found more than 222,000 individually wrapped packets of fentanyl, weighing over three kilograms total.  While Griffin argues that his role in the drug trafficking organization was minimal, (Mot. to Revoke at 2, Dkt. No. 134), his

claim is rebutted by the sheer quantity of drugs found in the vehicle and his alleged role in transporting them from Philadelphia to the Pittsburgh area. Far from minimal, his role was crucial.

The third factor, Griffin's personal history and characteristics, also warrant his continued detention. The Ford Explorer was out on a three-day rental, due to be returned to Pittsburgh International Airport. (Gov't's Resp. in Opp'n at 4.) At the February 20, 2026 detention hearing, (Dkt. No. 144), the Government submitted that Griffin came to Philadelphia from Pittsburgh for the sole purpose of transporting fentanyl, and that he has no other ties to this area.

Griffin has no verifiable employment. He claims that he can return to work as a delivery driver if he is released. (Mot. to Revoke at 3.) But his counsel acknowledged at the hearing that this is not assured. Griffin asserts in his Motion that if released he would live with a friend of fifteen years, Chantel Love, in Clairton, Pennsylvania. (*Id.*) But at the detention hearing, counsel represented Ms. Love was a backup plan, and that Griffin would instead live with his older brother, Carlos Griffin, and sister-in-law, Kelly Griffin, at their home in McKees Rocks, Pennsylvania. His living arrangement uncertain, and in either case, hundreds of miles from Philadelphia, the Court cannot say with confidence where it might find Griffin, if he is released. Indeed, at least one of Griffin's alleged conspirators remains on the lam, despite an active warrant for his arrest. (Gov't's Resp. in Opp'n at 3 n.1.)

The fourth factor, too, favors Griffin's continued detention. He poses a danger to the community because of the likelihood that he will traffic illicit drugs if he is released. *See Perry*, 788 F.2d at 111 (danger to the community arises from the likelihood that the

defendant will, if released, commit one of the proscribed federal offenses); *cf. United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985) (statutory language unequivocally establishes that Congress intended to equate trafficking drugs with a danger to the community).

Griffin cannot overcome the presumption in favor of his pretrial detention.  And, even if he had, the Government has shown by a preponderance of the evidence that no conditions can reasonably assure his appearance at trial and by clear and convincing evidence that no conditions will reasonably assure the safety of the community if he is released.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.